We're having your argument in our last case, number 161163, whenever the lawyers are ready. May it please the court. My name is Brad Vaness and I represent the petitioner Antonio Robleo-Morales. Your Honor, this court should grant this petition because the immigration's due process violations impacted the result proceeding here. And for that reason, this court should remand this case back to the immigration court to a different immigration judge. Your Honors, due process challenges are two steps in this circuit. First, we have to establish that the violations precluded a full and fair hearing. And then we have to show those violations prejudiced the respondent. The Rusu case from this court says prejudice is gauged by whether the due process violation was likely to impact the results of the proceedings. Not certainly, not definitely likely to impact the result of the proceedings. Here we have two examples and I would say one deprived my client of a full hearing and one deprived my client of a fair hearing. And as a threshold issue, the government does not contest the actual violations. They assume they occurred and then defend the case on prejudice. But to fully... Because they are entitled to be. That's right, Your Honor. But I want to emphasize my argument on the prejudice side. But to explain, you know, we have to go through what the violations are to fully show what impact the final proceeding. So the first due process violation we allege is that the immigration judge here at the second master calendar hearing. So that's not an evidentiary hearing. That is essentially a scheduling hearing and here they actually went through the charges of removability. My client, pro se at the time, the court recognized that he was uneducated and pro se speaking a second language, tried and requested to amend page five of his asylum application, not once but twice. Why is that important? Page five of the asylum application has some check boxes and explanation areas. And that is where you explain, you know, the first portion of the application says why you have passed fear or a well-founded fear of persecution in your home country. And then that page five is the on account of one of the five protected grounds for asylum. It's what... Didn't the IJ ask or repeatedly offer the petitioner an opportunity to further explain? And that's the first question. And the second question is if the petitioner had been allowed to amend the form and check a box, how would that have been dispositive? Yes, Your Honor. I do think the immigration judge asked open-ended questions as the government alleges. I don't think that's enough. The immigration judge has statutory and regulatory and constitutional duties to ensure that a complete application is reviewed. It does go to the prejudice question. I agree, Your Honor. But I do think, again, and this is important to put in context, the application was not allowed to be amended at the master calendar. Forty-five days later, they sit down for their individual hearing. Is there anything in the record, and I didn't understand you to be making this argument, but is there anything in the record that suggests that your client felt he couldn't raise issues at the evidentiary hearing because he had not amended page five? Then I might understand what you were talking about, but I don't see that connection in this case. I mean, that was part of my question. Okay, thank you. Your Honor, my client, when the immigration judge did not let him amend the application, that's it for him. Again, pro se application. Okay, that's not exactly a question. You asked in the record. What I'm asking is, fine, assume hypothetically for the moment that the record is consistent with this idea that the I.J. denied leave to amend the application. I'm trying to figure out why that makes a difference, not under the prejudice prong, just how does that show that something fundamentally unfair happened here if when he gets to the evidentiary hearing, your client has every opportunity to say what he would have said on page five? And I'm asking you, is it possible that he thought he couldn't do that because he had not been allowed to amend his application? Maybe he thought he could only say stuff that was in his application. Yes, Your Honor. I think that's absolutely possible, and I think if you look at the very last page of the transcript, you see my client, again, pro se, thanking the judge for trying to help him.  That he thought the immigration judge was trying to get the claims from him. And I do think the immigration judge has a duty to go through and ask questions more than he did here. What would he have, is there any indication proper of what the amendment would have said? Your Honor, I think at a minimum he would have checked the bases. Why, and that would matter why? Your Honor. As I understood it, he was given, he said that his problem was with gangs attempting to extort money. And he, we went off the record, and then back on the record, the IJ sought clarification, and the petitioner confirmed that his fear was a fear of gangs and extortion. And at the third removal petition, he testified about the results of not paying money to gangs or collect money for them. So what I'm asking is, and the IJ denied relief or failure to establish that treatment was based on race, religion, nationality, membership in a social group or political group. What was petitioner not able to show when he was asked several times to clarify the basis? Why did you leave Guatemala? What was the reason you left your home country? Anything else you wanted to tell me? Well, and I think the reason why he didn't pay the money, because there's evidence in the record. Okay, that's not really the question. That's not the question. My question, and it's really pretty straightforward. He was asked fairly repeatedly, why did you leave Guatemala? And the answers that he got on multiple occasions was the same. Gangs attempting to extort money. So what else? And the IJ said, what else? Is there anything else? Before we even get to the evidentiary hearing. Well, first off, it's a problem that he's trying to get evidence in a non-evidentiary hearing. But he's being asked. He's being asked. He is testifying. He's being asked. I'll just say the record for the decision should be what's at the individual hearing, not necessarily what's at the master calendar. But putting that aside, Your Honor, I think that the reason why my client left, the facts are, I think you're right. He signed an unamended application and affirmed it was true and correct. That's because he had previously been asked to complete it twice and was not allowed. Your Honor. But that would make it not true or correct. I think it would make it incomplete. And I think it's the immigration judge's duty to ensure the application is complete, especially in a scenario like this. To answer your question, because I do want to answer it. I want to take my best chance at answering it. Extortion can be a basis for asylum. Extortion from gangs can be a basis for asylum. It depends on why the gang extorted the money and the severity to it. And the problem is that the immigration judge stopped there. And I think that goes to our second claim of due process violation here. This immigration judge, before any evidence was on the record, before any evidence you're hearing started, he said, I'm going to hear your case, but it's not a very strong case. And the reason is because I understand there's a lot of gangs in Guatemala and they try to extort money from people or try to recruit people. That doesn't provide a legal basis for you to get asylum here. So it's your submission that extortion without any familial reason for it or any other identifiable reason, that extortion of money is a basis for relief under the immigration law? In that scenario, no, Your Honor. No. So you need extortion plus, right? I agree with that, Your Honor. And I think that the immigration judge had judged the case before he heard it. He asked the questions to get to that resolution. But he asked questions to determine whether Petitioner could establish whether extortion and recruitment alone. He asked for motivation, motivated the gangs to harm Petitioner. So he actually went, he did do as you're suggesting he could do and went beyond just the fact of the questions to try to reach motivation. And when the Petitioner indicated he wanted to say something, the IJ ensured that those statements were included. He said, is there anything else you want to add to your story? Is there anything else you want to tell me? While you're off the record, you indicated you wanted to say something. What did you want to say? And, Your Honor, I'm not disagreeing what the record says. I think that the immigration judge, as Judge Motz put it, stopped at questions about extortion. I think he had a duty to ask if there was a plus. And I don't think that's in the record. I'm sorry. So is it your position, and maybe this is your position, that really the IJ should ask very leading questions? Is it possible that the reason the gangs were targeting you is your political views? Is it possible there's some familial relationship that really needs to tick through? Because I understand, the IJ plays a somewhat different role than your average judge. So is that your position? Your Honor, I think so. Where's the authority for that? Well, I would point you to the BIA's decision in EFTL, I think those are the right letters, where it says that in an asylum proceeding, an immigration judge has to go above and beyond the preliminary questioning. And it says it needs to go a little bit further. But she did. Well, and I think in this context, it's important. With a pro se applicant, the immigration judge is really sitting in a very, very similar role as an asylum officer at a USCIS office. But not as an advocate. Excuse me? Not as an advocate. I agree. But he does have a duty to ask sufficient questions to determine. And here's the thing. Again, I think this is important. Maybe I'm the only one. But the 45-day period in between not amending the application and getting to the individual hearing, if I'm the immigration judge and I'm flipping through it and I see unchecked boxes, there's no point in me asking. But if I see a checkbox that says political opinion, I'm going to go, Mr. Roblero, you claim a political opinion. What is that? That's the question we're looking for. And my client was deprived of that opportunity. Is that your proper? Because I didn't see a reason why you – maybe I just missed it in your paper. It's entirely possible. That the asserted reason that he would have put up was some sort of political prosecution? Or was it a familial thing? I think he would have made two claims. That's a political opinion and a membership in a particular social group. And I think that would have been business owners in Guatemala who opposed the gangs. He was a taxi driver. And taxi drivers are recognized some places in some jurisdictions as a particular social group. A political prosecution, what would be that? It would be – and again, I can't speak for Mr. Roblero. They're one political party? Well, Your Honor, we are seeking or we're claiming persecution on a private actor, not a governmental actor. And so we have to argue also that – or show that the government is unwilling or unable to control them. And so when you have a political opinion and you argue corruption and all that kind of stuff. And so there are different ways to prove the on account of portion. But it has to be a political opinion. I don't – I think the question is in order to understand, assuming that there's a violation, why there's prejudice, it would help me to know what else we would have learned. Because especially given the open-ended question and the opportunity to elaborate. And, Your Honor, unfortunately I don't have the opportunity to present new evidence to the Board of Immigration Appeals or to this court. I'm asking you this moment what the proffer would be. Your Honor, I think he would claim a political opinion saying that he is opposed – I know you said that, but I haven't heard what – It would be – It would be more than that just to say we're claiming a political discrimination. Your Honor, I think it would be amalgamation of some against gangs, against the corrupt government, and the government not controlling the gangs. That's not a political view. Well, Your Honor, I think that – If so, it has an awful lot of adherence. It would seem to me to include the entire country. Wait a minute. Your Honor, I think that this is the importance of sending this back and letting – The judge has some immutable characteristic. I think immutable characteristic is a test on the membership in a particular social group, but not necessarily a political opinion. Well, you'd need that, wouldn't you? Well, we'd need that for the social group, the business owners. Well, and again, I think the nuance of that is that whether he should be forced to leave his business because of that. And whether if he were to return, he would always be known as a cab driver. And again, Your Honor, I would just suggest also that this is also – I mean, I'm making these as two separate claims, but we also have a case where the immigration judge has gone on record and said this is a weak case. Yeah, and you've told us that three or four times, and you lead with that, and maybe that wasn't such a good thing to say, but actually when I argued cases in the district court or the court of appeals would say, well, look, this case looks pretty weak. It was helpful to me to sort of, well, let me tell you why it wasn't. And I think it's a little different here because he's a fact finder. To be sure it's different, but well, but in the district court we have all kinds of fact finders. That's what we're about in district courts, right? Yes, Your Honor. So it is different because it's an immigration context and because this man is pro se, but if you look at this record, it just does not – it's full of open-ended probative questions, notwithstanding the beginning suggestion that the case is weak. May I just address that? Yes, of course. I would just point out, Your Honor, that the claims we're making are hard claims to make, and the Sixth Circuit cases we cited, and I believe Rusu also talks about the subtlety and the difficulty of proving claims in pre-judge because often in the record you just don't have it. Here, this is a unique record in that we do have an immigration judge stating at a second master calendar, look, you have a weak claim and I guess I'll hear your application. And he says what you've given me so far isn't cutting it. The problem, I see so many administrative judge records where the administrative judge did a lot less. It's hard for me to see that this judge didn't put an effort into extracting relevant information from the petitioner in what must have been a very difficult situation in which the petitioner found himself. And, Judge, again, I know my time is out, but I'm not suggesting that the immigration judge's job is easy, but I do think he has a duty to ask the facts and, again, ensure a complete application and ask about the answers to a complete application in an impartial way. I will let my colleague. Good morning. Good morning. May it please the Court. My name is Craig Newell and I'm here on behalf of the Attorney General. The Court should deny this petition for review because Mr. Roblero has failed to demonstrate the requisite prejudice to be successful on his procedural due process claim. Under this Court's precedent for Mr. Roblero to have shown prejudice, he had to show that the alleged defect in his proceeding, which he claims was the immigration judge not allowing him to amend his asylum application to check those two boxes, he has to show that those actions likely impacted the results of his proceedings. He has wholly failed to make this prejudice show because he never specified the actual political opinion or particular social group he would have testified about. And by not presenting that to the Board, nor now before the Court, he has consequently failed to show that the outcome of the asylum or withholding removal claim would have been any different. As of, if you look back to his appeal before the Board, he never put forth what that political opinion is. There's the fact now that it's being put forth that it's some kind of anti-gang or anti-corruption. The Board did not know of that at the time in a due case. No, no, no. In fairness, I asked him. Oh, I understand. No, I'm not holding that against him in any way. But not like you were. Well, I'm holding it against Mr. Blura in the sense that when he, he had to put forth this showing prejudice when he was before the Board. He had to do that. Is that right? Not when he was before the Board. When he was raising this procedural due process claim before the Board, he had counsel and he had to show both the error and the prejudice. He never, as we know, the particular social group determination can be complex. It has different factors of the immutability, the particularity of it, whether it's a socially distinct group in Guatemala, and those are very fact-intensive. But Mr. Obrero never led the Board in any direction of what that could have possibly been. And without knowing the particular social group or the political belief that he would have talked about, we can't assess that there was any prejudice. What would be the point of not allowing you to amend a form? There's no point in not allowing him to amend. What I think happened here is that request kind of went by the wayside. It doesn't matter. It just seemed to me, why not? I agree, Your Honor. I agree. I think what happened is because how the claim is being presented now and back before the Board that he wanted to amend it, to check off these boxes because he really wanted to get across that there was a political opinion here or a social group here. That's not what he really put forth before the immigration judge. And we need to judge the immigration judge's actions based on the circumstances before him. So he asked once to amend the page five. And then they go off the record. They seem to be talking about his wife and the circumstances of his wife and his children. Then they go back on the record, and he again asks, oh, can I complete page five? As we know, page five has those boxes, but it also has the main boxes that fill in what happened to you in the past and what you fear will happen to you in the future. So the judge asks him, okay, what do you want to amend? And he says, when the official caught me in the desert, I tried to explain to him that I was afraid to go back to my country. But he wouldn't let me explain, and he told me that he didn't make the law. What it seems like is Mr. Roblero is trying to clear up discrepancy. When he was first apprehended at the border, and if you look at the back of the record, there's his record of sworn statement, that initial interaction. And they asked, are you afraid to return to Guatemala? He said no, and he also said that he made this journey here to find work. And it seemed that he did not want those initial statements to be held against him in some manner. And so then the immigration judge clarifies the basis of his fear that it's of gangs, that he has been extorted for money in the past. He goes yes, and the immigration judge explains to him that, well, you have submitted this application, and I'm going to give you a hearing on this application. So reading that and the totality of those circumstances, the immigration judge's actions regarding that were appropriate, and it did seem like the amendment didn't seem necessary. But there would have been no harm by allowing him to amend it at that time. And also, in addition to the lack of prejudice, the other key fault with his due process claim is the fact that he's not claiming that the immigration judge prevented him from saying anything at his hearing that he thought would be important in support of his claim. The immigration judge did not deprive him of an opportunity to present that claim, and that's how we determine whether he had a full or fair hearing. The immigration judge's duty is not to ensure that an alien, even a pro se alien, has a perfect presentation of his claim, just that he has a reasonable opportunity to present it. And it's never been advanced that he felt constricted about what he could testify. It essentially boils down to, his claim essentially boils down to, as if he checked those boxes, the immigration judge would have asked better questions, or almost like he's requiring the immigration judge to ask him leading questions that would have bagged answers that would have set forth a meritorious claim. And the immigration judge, despite the different circumstances of immigration and pro se alien with a different language, he or she must remain an impartial adjudicator, and that's for both parties. It was still Mr. Roblero's burden to meet, burden approved to meet his claims for asylum with holding removal, and he failed to meet those. And so because he has failed both to show error on behalf of the immigration judge or any prejudice resulting from any of the immigration judge's actions, his due process claim is lacking in merit. And if there are no further questions from the court, I ask that the court deny this petition for review. Thank you, Your Honors. Thank you. One brief point, and then I know that's the end of the day. The government argues that we should have at the BIA or in front of this court said what the political opinion or membership in a particular social group would be. In the same brief, they argue that attorney arguments are not evidence. Frankly, we don't have a mechanism at the Board of Immigration Appeals or in this court to present new facts to you. That's an inappropriate thing to do on appeal, either at the administrative level or here. And so what this court should be looking at is whether Mr. Roblero had a full and fair opportunity to present everything. The prejudice, I think, is pretty clear, if you guys think it's prejudicial. They wouldn't let us amend the nexus part of the application. They then deny us because there's no nexus. The immigration judge says this is a weak claim because there's a lot of gangs in Guatemala. When he denies the application, he says, well, there's a lot of gangs in Guatemala, so this isn't a claim. I think those are our two claims, and unless the panel has any other questions, I will let you to your lunch. Well, thank you very much. Thank you. We do love our lunch. We will ask the clerk to return to court, and then we'll come down and greet the panel.
judges: Diana Gribbon Motz, Allyson K. Duncan, Pamela A. Harris